## Pigg v. Roberts.

January 13, 1950.

John Noland for appellant.

William B. Martin and W. E. Darragh for appellee.

JUDGE LATIMER—Affirming.

Sam H. Roberts obtained judgment in the sum of $2500, as real estate commission, from Louis H. Pigg. From that judgment this appeal is prosecuted.

The record discloses that Sam H. Roberts, a real estate broker, had as a client A. E. Hukle, who was desirous of purchasing a hotel. J. E. Jones, salesman for Roberts, took this client to Berea to see the Bluegrass Hotel. Mr. Hukle was not interested in this property. Mr. Jones, after returning to Lexington, called Mr. Pigg, owner of the Colonial Hotel in Berea, informing him that he had a client who might be interested in his hotel and asked Mr. Pigg if he would sell same. Mr. Pigg, desiring a little time to think the matter over, asked Mr. Jones to call him back. On the following day Mr. Jones did call and Pigg stated he would take $55,000 net for the hotel. Mr. Pigg then gave permission to show the hotel. Soon thereafter Mr. Jones and Mr. Hukle went to Berea where they met Mr. Pigg and viewed the property. Mr. Jones priced the hotel to Hukle for $57,250, an amount sufficient to satisfy the net price asked by Mr. Pigg and also pay the commission.

When Mr. Pigg learned that J. E. Jones had priced the property at that figure, he vigorously objected. The attitude of Mr. Pigg with respect to this matter can best be shown by the testimony of Mr. Pigg. He was asked: "Q. I will ask you if Hukle didn't assure you that if commission had to be paid he would pay it and save you the annoyance? A. No. I told him then and there they would have to work that out. I told Jones and Hukle. 'I am not responsible for commission and you can't raise the price on my property.' " Mr. Pigg says that he got up and walked away and said he would not be in any way involved in a question of commission. However, the terms of the sale were talked over and Mr. Pigg wanted $20,000 cash payment and the balance to be paid in 84 monthly installments. Mr. Hukle returned with Mr. Jones to Lexington and immediately set about to effect arrangement to finance the transaction. Mr. Jones states that numerous telephone conversations took place between him and Mr. Pigg, and that he repeatedly informed Mr. Pigg that Mr. Hukle was making effort to arrange financing. Upon completion of the plans, Mr. Jones said he called Mr. Pigg and informed him that he and Mr. Hukle would be in Berea the following morning to consummate the deal, but later, and at about 9:00 o'clock on the same evening, he received a telephone call from Mr. Pigg informing him that the deal was off; that he wasn't satisfied with Hukle's ability to make the deferred payments. However, on the following morning Mr. Hukle went to Berea and took the matter up with Mr. Pigg and a few days thereafter, the sale of the property was consummated, Mr. Hukle taking ¾ interest in the hotel and a Mr. Garver a ¼ interest. Sam H. Roberts, the real estate broker demanded payment of commission for the sale of the hotel. Mr. Pigg refused. Mr. Roberts then filed what purports to be a petition in equity against A. E. Hukle and Louis H. Pigg under the Declaratory Judgment Act, Civil Code of Practice, sec. 639a—1 et seq., seeking a declaration of rights of the parties and asking the Court to determine and declare which of the defendants owes the plaintiff for his services in bringing about the sale of the property, and that if the Court should declare that A. E. Hukle owes the plaintiff, he prays for a judgment against him in the sum of $1800, and if the Court declares Louis H. Pigg owes the plain-

tiff, asked for a judgment against him in the sum of $2750.

Hukle filed a general demurrer, which apparently was sustained. Having failed to file answer, default judgment went against Mr. Pigg. Later motion was made to set aside the default judgment. This was done. Mr. Pigg then filed general demurrer. Plaintiff then dismissed the cause of action as to Hukle and filed his amended petition aga'nst Pigg. The cause was transferred to the ordinary docket and tried before a jury, which returned verdict in favor of Roberts.

Mr. Pigg is here urging reversal because (1) the instructions were erroneous, (2) the Court overruled motion for a directed verd'ct, and (3) the verdict is not supported by the evidence.

Motion has been filed here to dismiss the appeal on the grounds that this being a declaratory judgment action the record was not filed in time. This motion has been overruled. It is obvious that, although purportedly brought under the Declaratory Judgment Act, the action is in no way a declaratory judgment action. This is especially so since the action against Hukle was dismissed and the amended petit'on filed against Mr. Pigg, followed by the proper transfer of the action to the ordinary docket.

The appellant complains of the Court's refusal to give two offered instructions. The first submits the question as to whether or not Jones was acting as agent of the seller; the second as to whether or not he was the agent of Hukle. The action having been dism'ssed as to Hukle, there could have been no reason for instruction (2) as offered. The action being against Pigg, Roberts' cause must stand or fall on the question of whether or not he was acting as agent of Pigg. The instruction as g'ven covers the idea embraced in offered instruction (1). The crux of the matter is whether or not Mr. Pigg authorized Roberts, or his agent, to sell the hotel and whether or not Roberts, or his agent, was the procuring cause of the sale. There is no doubt but that at the t'me Mr. Jones called about the property and obtained permission to show it, Mr. Pigg did say that he wanted $55,000 net. There is no doubt but that Mr. Jones understood this and, in order to

provide for commission, he quoted the purchase price to Mr. Hukle at a sufficient amount above this net to provide the commission. It was Mr. Pigg who objected to this and insisted that the agent could not raise the price of his property.

We note this further crucial instance. A few hours after Mr. Jones had called Mr. Pigg, informing him that he and the purchaser would be at his place on the following day to consummate the transaction, Mr. Pigg called Jones and told him the deal was off, and then on the following day entered into negotiations with Mr. Jones' client and consummated a deal with him without even notifying Mr. Jones.

In Treacy v. Gilman, 161 Ky. 513, 171 S. W. 153, 155, we find this language: "We think that where the owner of property puts it in the hands of a real estate agent for sale, and the agent finds a purchaser, but the contemplated purchaser and the owner cannot agree on terms, and the owner, with a view of avoiding the agent's commission, withdraws the property from the hands of the agent without his consent and breaks off negotiations with the purchaser, but thereafter sells the property to the purchaser brought to his attention by the agent, or to a third person (who is acting) for him, the agent should be treated as the procuring cause of the sale and entitled to his commission. * * * In Vreeland v. Vetterlein, 33 N. J. Law 247; Plant v. Thompson, 42 Kan. 664, 22 P. 726, 16 Am. St. Rep. 512; Hoadley v. Savings Bank of Danbury, 71 Conn. 599, 42 A. 667, 44 L. R. A. 321; Branch v. Moore, 84 Ark. 462, 105 S. W. 1178, 120 Am. St. Rep. 78; Henninger v. Burch, 90 Minn. 43, 95 N. W. 578; Coleman's Ex'r v. Meade, 13 Bush 358; Stedman & Bowman v. Richardson, 100 Ky. 79, 37 S. W. 259; and in many other cases, the general rule is announced that where the real estate broker brings the parties together and is the procuring cause of the sale, he may recover his commissions, although the sale may in fact be made directly by the owner to the purchaser brought to his attention by the real estate broker." See also Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153.

There can be no dispute but that Roberts, or his agent, had authority to show the property. The agent,

Jones, brought the purchaser and seller together. The negotiations between the two were commenced by the agent, Jones. Mr. Pigg called the deal off with Hukle and almost immediately thereafter entered into a contract for the sale of the property to Hukle.

Under the governing rules heretofore enunciated, and under the facts above, we conclude that the court properly refused the offered instructions; gave correct instructions; and properly overruled the motion for a directed verdict.

The judgment is affirmed.