636 P.2d 149

**Robert MISCIONE and Elizabeth Miscione, husband and wife, Plaintiffs/Appellants,**

v.

**Barry R. BISHOP and Gail L. Bishop, husband and wife, jointly and severally; William W. Meyers and Transamerica Title Company, jointly and severally, Defendants/Appellees.**

**No. 2 Ca–Civ 3928.**

Court of Appeals of Arizona, Division 2.

Oct. 20, 1981.

Mary Anne Peters, Tucson, for plaintiffs/appellants.

Greenwood, Ryan, Herbolich & Attonna, Ltd. by Michael J. Herbolich and Wallace R. Hoggatt, Douglas, for defendants/appellees Transamerica and Meyers.

Robert Morrison, Sierra Vista, for defendants/appellees Bishop.

## OPINION

HATHAWAY, Chief Judge.

This is an appeal from the denial of a motion for new trial after a trial involving the incorrect execution of a promissory note.

In 1972, appellants (the Misciones) agreed to sell an unimproved lot to appellees (the Bishops). The Bishops agreed to pay $3,000 down and to give a mortgage securing a promissory note in which they would be obligated to pay the remaining purchase price as follows: One-tenth of the principal plus 7% interest per year, with the right to prepay without penalty. Unknown to the Misciones, the real estate agent prepared the note. It stated:

"... the sum of Ten Thousand Seven Hundred Fifty and NO/100 DOLLARS, in installments of *$1,075.00* or more, annually, payable on the *1st* day of *May* beginning on the *1st* day of *May, 1973,*

with interest on all unpaid principal from *May 11, 1972*, until paid, at the rate of 7% per annum payable annually, the interest to be first deducted from the regular annual installments, and the balance to be applied upon the principal."

The closing was handled by appellee Meyers, an escrow officer of appellee Transamerica Title Company. Meyers, who did not check the promissory note for accuracy, gave it to the Bishops to sign and then completed the closing.

The Misciones were not given a copy of the promissory note. They noticed the mistake a year later when the Bishops tendered the amount they had been billed for, $1,075 (one-tenth the principal only). The Misciones contacted the Bishops several times to correct the mistake and Transamerica sent the Bishops a new promissory note to sign. Even though the Bishops admitted that the amount requested by the collection agent was incorrect and expressed their willingness to do what was right, they did not execute a new note and in fact tendered the next year's payment in the incorrect amount.

The Misciones then filed suit. In Count I of their complaint, they prayed for attorney's fees and other damages, reformation of the note and mortgage and a finding of negligence against Transamerica and Meyers for the incorrect preparation of the note and against the Bishops for their failure to correct it. Count II, on the note, asked for damages and foreclosure. In Count III, they alleged fraud and prayed for rescission, forfeiture of all sums paid and punitive damages.

The Misciones refused an offer of judgment and, in 1975, moved for partial summary judgment. In 1976, the Bishops tendered the entire sum remaining on the note—the full amount of principal and interest called for in the original contract—and also moved for summary judgment. The court found that the Misciones were entitled to reformation of the note and mortgage, but not to rescission and restoration of the property. However, because "the plaintiffs were in fact tendered all principal and interest to which they were entitled," the court found reformation to be a "futile" remedy and therefore did not order it. The court denied the Misciones' motion for summary judgment and granted appellees' motion to the extent that Transamerica was ordered to give the money tendered by the Bishops to the Misciones in satisfaction of the mortgage. At trial on the remaining issues, four years later, the court entered judgment against the Misciones. They moved for a new trial and appealed the denial of that motion.

The Misciones raise several issues on appeal. First, they contend that the order recognizing their right to reformation related back to the execution of the promissory note. It follows from this, they argue, that the Bishops were in default of the note when they tendered the payments of $1,075 per year. This "default" activated a provision in the note for the acceleration of payments, with a higher interest rate, according to the Misciones.

We agree with the trial court's unwillingness to find a party in default retroactively when that party has tendered payments in the sum stated in the note. The Misciones argue, however, that an order reforming an instrument relates back to its execution and that the rights and liabilities of the parties are as they were originally intended. This is a correct statement of the law, but no authorities cited to or found by us would apply this rule in the context of the instant case. The Misciones cite *Gurske v. Strate*, 165 Neb. 882, 87 N.W.2d 703 (1958) and 66 Am.Jur.2d, Reformation of Instruments, § 11, to support their theory. These authorities merely stand for the proposition that the reformation relates back to the time of the original agreement so as to defeat the rights of intervening creditors. In *Gurske*, for example, Strate gave Gurske a note and mortgage on property Strate did not in fact own. A creditor then secured a lien on the property actually owned by Strate. Upon Gurske's suit to reform and foreclose on the mortgage, the court held that Gurske's lien was superior to the intervening creditor's lien, because

the reformation of the mortgage to include the correct description of Strate's property related back to the execution of the mortgage. This is far different from the broad-rule of law suggested here, by which the Bishops would be found in default retroactively. The trial court therefore correctly disallowed penalty interest as an element of damages.

Consequential damages also were claimed for appellants' inability to discount the promissory note, as a result of which they borrowed money on their Master Charge account at 18% interest. Consequential damages are recoverable only where they arise naturally from the breach of a contract and where they were in the contemplation of the parties. *Cole v. Atkins*, 69 Ariz. 81, 209 P.2d 859 (1949); see *Fogleman v. Peruvian Associates*, 127 Ariz. 504, 622 P.2d 63 (1980). The trial court expressly found that the Misciones' alleged injury, measured by the interest they paid on their Master Charge loan, was not a foreseeable item of damages. On appeal, the facts must be viewed in the light most favorable to supporting the trial court's findings. *Howard P. Foley Co. v. Harris*, 10 Ariz.App. 78, 456 P.2d 398 (1969). The record discloses no evidence that the parties contemplated this element of damages.

Further, the note was not proved to be non-negotiable. The only evidence of this was that Miscione tried to discount it to one potential buyer, who turned him down. Indeed, the note on its face conforms to the requirements for negotiability listed in A.R.S. § 44–2504. The Misciones argue, however, that the note, stating an incorrect sum, was void because of a complete failure of consideration; being void, it does not come within the law of negotiable instruments. See *Hillsdale Nat. Bank v. Sansone*, 11 N.J.Super. 390, 78 A.2d 441 (1951); 11 Am.Jur.2d, Bills and Notes, § 56. It is the contract that must be void to take the promissory note out of the application of the negotiable instruments statute. In the instant case, the contract, for which the note was consideration, was held valid. The Misciones failed to prove this element of damages and the trial court did not err in its finding.

The court below denied the claim for attorney's fees. The claim was not based on A.R.S. § 12–341.01, which was not in effect at the time of this transaction. It is based on a provision of the promissory note, which states:

> "Should suit be brought to recover on this note we promise to pay as attorney's fees a reasonable amount additional on the amount found due hereunder."

We believe that a reasonable construction of this clause would have required the Misciones to prevail in an action for collection on the note in case of default. There was no default. Further, in the 1976 summary judgment proceeding, the court expressly found that the Bishops had tendered all amounts then due under the note. We hold, therefore, that there is no basis for recovery of attorney's fees against the Bishops.

Similarly, there is no authority for assessing attorney's fees against Transamerica and Meyers. Although, as a general rule, attorney's fees are awarded only if provided for by statute or contract, an exception is made where the negligence of an escrow agent causes a party to prosecute or defend a suit to protect his interests in the escrowed property. *Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41 (App.1980).

The complaint alleged negligence on the part of Meyers and Transamerica for drawing the note erroneously, failing to discover the error and delivering the deed to the Bishops. We agree with the trial court's finding that these defendants were not negligent. Testimony showed that they did not draft the note. After the error was discovered, Transamerica worked to have it corrected. Because the evidence of negligence was insufficient, there was no basis for awarding attorney's fees.

The remaining part of the claim is for punitive damages, which the trial court considered and denied. Punitive damages are not usually awarded in contract actions, unless there is an accompanying

tort. *Fogleman v. Peruvian Associates,* supra. Though the Misciones made allegations of negligence and references to the "fake note," they did not prove tortious or fraudulent conduct. Moreover, whether to award punitive damages is within the discretion of the trier of fact. In addition, they are generally not awarded in the absence of proof of actual damages. *Gomez v. Dykes,* 89 Ariz. 171, 359 P.2d 760 (1961).

The judgment is affirmed.

HOWARD and BIRDSALL, JJ., concur.